# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEFFREY A. QUINNELL,

       Plaintiff,

vs.                                         No. CIV 01-828 LH/LCS

JO ANNE B. BARNHART,[1]
**Commissioner,
Social Security Administration,**

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed February 25, 2002 (*Doc. 9*). The Commissioner of the Social Security Administration issued a final decision denying the Plaintiff his claim for a period of disability and/or disability insurance benefits. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well-taken and recommends that it be DENIED.

## PROPOSED FINDINGS

## I. PROCEDURAL RECORD

1.       Plaintiff Jeffrey Quinnell filed an application for a period of disability and/or disability

---

[1]     Effective November 14, 2001, Jo Anne B. Barnhart was appointed to serve as Commissioner of the Social Security Administration. Pursuant to FED. R. CIV. P. 25 (d), Jo Anne B. Barnhart, Commissioner of the Social Security Administration, is substituted for Larry G. Massanari, Acting Commissioner of the Social Security Administration, as the defendant in this action.

1

insurance benefits with the Social Security Administration on August 29, 1996 alleging a disability since March 29, 1996 due to chronic, inoperable low back pain, chronic restless leg syndrome, depression, and a fractured vertebrae. *See* R. at 81 and 92. Plaintiff's application was denied at the initial level on November 26, 1996, *see* R. at 69, and at the reconsideration level on June 2, 1997, *see* R. at 60. Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge on March 10, 1999. *See* R. at 72.

2. The Commissioner's ALJ conducted a hearing on Mr. Quinnell's application on April 22, 1999. *See* R. at 25. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since March 29, 1996; the severity of the claimant's impairments did not meet or equal a listed impairment; the claimant had a "severe" impairment or combination of impairments consisting of a history of a laminectomy at one level of his lumbar spine and low back pain during the times under review; the claimant's subjective complaints and functional limitations, including pain were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant had a residual functional capacity for at least sedentary work on a sustained basis. Despite this finding, the ALJ found that the Plaintiff could not return to his relevant past job and thus called a vocational expert to testify. The VE testified that the claimant had transferable skills from his past relevant work and identified them as semiskilled/skilled occupations including a collections clerk and an investigative credit application clerk. *See* R. at 13-18.

3. The ALJ entered his decision June 25, 1999. *See* R. at 13-18. Thereafter, the Plaintiff filed a request for review in August of 1999 to the Appeals Council. *See* R. at 8. On May 17, 2001,

the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. *See* R. at 5. The Plaintiff subsequently filed his complaint for court review of the ALJ's decision on July 18, 2001. (*Doc. 1*).

## II. STANDARD OF REVIEW

4. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5. In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

6. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets

or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

7. Mr. Quinnell was age forty-six on his onset date of disability and when he filed his application with the Social Security Administration. *See* R. at 81. The record indicates that in November of 1993, Mr. Quinnell sustained a back injury at work. *See* R. at 147. Over the next few months he was treated with physical therapy, anti-inflammatories, and allowed a limited time off work. *See id*. Eventually, Mr. Quinnell underwent surgery in February of 1994. *See* R. at 191. The surgery produced excellent results in terms of pain relief. *See id*. However, he never did recover full strength or reflexes in his distal right leg and foot. *See id.* Mr. Quinnell subsequently returned to work, initially on light duty and then full duty, without any significant aftereffects other than slightly increased lower back pain. *See id*.

8. On September 2, 1994, Mr. Quinnell was seen by Steven Garfin, M.D. Dr. Garfin acknowledged that Mr. Quinnell had "persistent back pain, limitation of motion, and stiffness." *See* R. at 192. The doctor performed a complete evaluation and concluded that Mr. Quinnell had no work restrictions and that his limitation in spine motion would not preclude him from performing his "normal and customary job for the County." *See* R. at 194. Approximately six months later, Mr. Quinnell complained of sleeping problems and restless legs during his visit with J. Edward Jackson, M.D. *See* R. at 155. Dr. Jackson specifically wrote that "Mr. Quinnell has had an excellent recovery

4

from his surgery and is active lifting weights on Tuesday and Saturday as well as tai chi class once a week and tai chi daily. He has not had any problems with back pain, radicular symptoms or leg weakness, no falls, no trauma [and] no depression." *See id*.

9. Mr. Quinnell saw Dr. Garfin again on June 1, 1994. *See* R. at 182. Dr. Garfin noted that he was concerned of a possible herniated disc, however, he added that there was no harm in Mr. Quinnell returning to work. *See* R. at 183. Nearly two months later, Mr. Quinnell described a flare of acute low back pain to Dr. Garfin. *See* R. at 177. Dr. Garfin recommended a more aggressive therapy directed towards his back pain with back strengthening. *See id*. The doctor also noted that Mr. Quinnell could continue working, but he may have to take off if his back flares up due to sitting, driving, bending, and twisting. *See id*. Therefore, Dr. Garfin restricted his work day to six hours. *See id*.

10. On October 31, 1995, Mr. Quinnell was again evaluated by Dr. Jackson. *See* R. at 147. He described lower back pain that limited his ability to sit or stand for long periods of time. The doctor noted that Mr. Quinnell exhibited feelings of hopelessness, markedly diminished sexual interest, and occasional difficulties with concentration and social withdrawal. *See* R. at 148. Dr. Jackson's final assessment was that Mr. Quinnell suffers from lumbar disk disease, restless leg syndrome, chronic pain related to spinal disease and clinical major depression. *See* R. at 149. However, one month later, Dr. Garfin stated that although Mr. Quinnell appears depressed, it is most likely related to his chronic back pain. *See* R. at 166. Dr. Garfin added that Mr. Quinnell may continue with his regular work. *See id*. Dr. Garfin reiterated his finding in December of 1995 by stating "Mr Quinnell may continue to work in his usual and customary job. . . . I do believe that it is

5

appropriate and tolerable for him in his current condition to work without significant modification." *See* R. at 164. Dr. Garfin stated this in lieu of Mr. Quinnell's significant flare up.

11. Subsequently, in January of 1996, Mr. Quinnell's diagnosis from Dr. Jackson remained the same: chronic back pain, restless leg syndrome, and major depression. *See* R. at 250. However, a month later Mr. Quinnell reported that he experienced increase in sitting tolerance and walking distance. *See* R. at 248.

12. In April of 1996, Dr. Jackson "strongly recommended" medical retirement for Mr. Quinnell due to the deterioration of his ability to function. *See* R. at 133. Seven months later, Clinton Morgan, M.D. administered a residual functional capacity assessment. *See* R. at 217. In that assessment, he discredited Dr. Jackson's opinion in stating that "Dr. Jackson's conclusions are not consistent with the other medical evidence in the file." *See* R. at 223.

13. In October of 1996, Mr. Quinnell was seen by David N. Rouleau, M.D. Dr. Rouleau was treating Mr. Quinnell for chronic back pain, depression, sacroiliitis,[2] back spasms, and restless leg syndrome. *See* R. at 228. The doctor concluded that despite his chronic back pain and restless leg syndrome, Mr. Quinnell ambulated well. *See* R. at 227. He also noted that Mr. Quinnell demonstrated increased physical activity and was no longer taking Vicodin for his muscle spasms. *See* R. at 227-29. Mr. Quinnell consulted with Dr. Rouleau again in April of 1997 and November of 1998. In November, 1998, Dr. Rouleau stated that Mr. Quinnell could not bend, lift, stoop, sit, stand or drive for any period of time due to his permanent disability of chronic pain. *See* R. at 265 and 266.

14. The following summary represents questions that were asked by the ALJ at Mr.

---

[2] Inflamation of the sacroiliac (sacrum and ilium) joint. *See* STEDMAN'S MEDICAL DICTIONARY 500 (26th ed. 1995).

Quinnell's hearing on April 22, 1999. The Plaintiff testified that he was employed as a communicable disease investigator. *See* R. at 32. His employment was terminated in May of 1995 due to the fact he could no longer perform his job functions due to the adverse physical side effects of his medications, including shaky hands, feeling "hung-over," and moody feelings. *See* R. at 34-35 and 45. At that time, he was taking a muscle relaxer, an anti-inflammatory, anti-seizure medication, Valium, an anti-acid reducer, and Prozac for depression. *See* R. at 35. Mr. Quinnell went on to testify that he has difficulty sitting or standing, has problems walking more than fifteen or twenty minutes, cannot drive without his lower back tightening up, has a lot of pain from his sciatic nerve, and that he is depressed. *See* R. at 36. Mr. Quinnell also stated that he could not do anything for long periods of time and if he did, he would be in bed for a few days as a result. *See* R. at 38-39. With respect to the Plaintiff's attention span and concentration, he stated that his focus and concentration were "horrible." *See* R. at 39.

15. Mr. Quinnell testified he underwent a laminectomy in May of 1995 because he fell down and sustained a partially herniated disc. *See* R. at 39. After the surgery he performed physical therapy and tai chi. *Id.* Mr. Quinnell stated that he is in pain for most of the day and that he uses ice and a TENS unit for relief and sometimes uses a cane. *See* R. at 44. He stated that he takes medication for his pain but that the side affects include shaky hands, confusion, and short temperateness. *See* R. at 45. Furthermore, he testified that he could not squat or bend but that he does drive once day. *See* R. at 46. Mr. Quinnell further testified that he has a Master's degree in Communications, that he used to be a manager of the scheduling department for a mobile multi-pager testing service and that he was once a substitute teacher. *See* R. at 41-42. When Mr. Quinnell's attorney questioned him about his social activity, he stated that he does not see many people besides his wife and brother. *See* R. at 47.

16. In addition to Mr. Quinnell, the ALJ called a vocational expert (VE). The ALJ asked the VE whether there were any jobs the claimant could perform with the following functional limitations: the claimant is able to sit, stand, and walk for fifteen minutes at a time or alternate sitting and standing at will; he has had occasional problems with climbing; he has had no problems with stooping, bending or crouching; he has had mild hand tremors resulting from his medications; and he has had somewhat limited but satisfactory ability to attend and concentrate during the relevant time period. *See* R. at 50-51. The VE testified that the available occupations that could withstand these limitations were a collections clerk and/or an investigative credit application clerk. *See* R. at 52.

## IV. DISCUSSION

17. Plaintiff raises five arguments in support of his Motion to Reverse or Remand the Administrative Agency Decision. First, Plaintiff argues that the ALJ improperly evaluated the Plaintiff's pain and erred in finding Plaintiff's testimony as not fully credible. Second, the ALJ incorrectly determined that Plaintiff had an RFC for sedentary work. Third, the ALJ misconstrued or ignored the VE's testimony. Fourth, the ALJ erred in ignoring a treating physician's opinion. And lastly, the ALJ failed to develop the record regarding mental impairments.

### Credibility

18. Plaintiff contends that the ALJ failed to perform the proper analysis of the Plaintiff's pain condition. In conjunction with this argument, Mr. Quinnell contends the ALJ's credibility determination is also flawed. Although the ALJ found "the claimant's testimony regarding his symptoms and functional restrictions to be credible overall," he did not find the claimant's testimony credible to the disabling degree alleged. *See* R. at 17.

19. First, in evaluating a claim of disabling pain, the appropriate analysis considers (1)

whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *See Glass v. Shalala*, 43 F. 3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F. 2d 161, 163 (10th Cir. 1987)).

20. The ALJ properly applied these factors in this case. The ALJ made the following findings:

> After reviewing the medical record, I find a lack of objective medical evidence to show that the claimant has had a reflex loss, sensory loss, or motor loss related to his lumbar spine during the relevant time period . . . [and] [m]ost of the medical evidence predates the claimant's alleged onset date of disability of March 29, 1996. *See* R. at 15.

The ALJ also noted that

> the claimant testified he has 'problems' sitting or standing for 15 minutes. Although he is not able to squat, sedentary work as defined in the regulations does not require a significant amount of squatting. Also, the claimant testified at the hearing that he is able to lift 10 to 15 pounds which is consistent with the demands of sedentary work. In addition, the claimant states that the has problems driving a motor vehicle. His focus and concentration are 'poor.' The claimant's testimony that he uses a cane 'occasionally' as well as a TENS unit and a back brace is not wholly substantiated by the medical record. In addition, the claimant's testimony that he is confined in bed for two days at a time is not supported by the underlying medical reports. *See* R. at 17.

The ALJ's findings acknowledge that the Plaintiff's complaints of pain were significant and functionally restrictive. *See* R. at 17. However, the ALJ concluded that there was insufficient medical evidence to support the Plaintiff's claim of pain to the disabling degree alleged.

21. After review of the entire record, I find that the record supports this finding. First, the only medical evidence which supports the Plaintiff's claim of pain to the disabling degree alleged is that of Dr. Jackson's opinion. In April of 1996, Dr. Jackson "strongly recommended" medical retirement for Mr. Quinnell due to the deterioration of his ability to function. *See* R. at 133. Seven

months later, Clinton Morgan, M.D. discredited Dr. Jackson's opinion in stating that "Dr. Jackson's conclusions are not consistent with the other medical evidence in the file." *See* R. at 223.

22. Second, the only other opinion that vaguely supports Dr. Jackson's assessment is that of Dr. Rouleau. Dr. Rouleau concluded that Mr. Quinnell ambulated well despite his chronic back pain and restless leg syndrome. *See* R. at 227. He also noted that Mr. Quinnell demonstrated increased physical activity and was no longer taking Vicodin for his muscle spasms. *See* R. at 227-29. One month after providing that assessment, Dr. Rouleau stated that Mr. Quinnell could not bend, lift, stoop, sit, stand or drive for any period of time due to his permanent disability of chronic pain. *See* R. at 265 and 266. The ALJ discredited Dr. Rouleau's opinion by stating that Dr. Rouleau consulted with Mr. Quinnell on only two occasions during 1998 and that during one of those visits, Mr. Quinnell's primary reason for seeing Dr. Rouleau was for his cellulitis, not his back pain. *See* R. at 264. In addition, Dr. Rouleau's notes indicate that Mr. Quinnell had been walking daily which would contradict his finding that Mr. Quinnell could not bend, lift, stoop, sit, stand or drive for any period of time due to his permanent disability. *See* R. at 263.

23. Furthermore, the Plaintiff himself testified that he has difficulty sitting or standing, has problems walking more than fifteen or twenty minutes, lifts no more than ten to fifteen pounds and drives every day except Sunday. *See* R. at 36 and 46 This testimony is not wholly consistent with either Dr. Jackson's or Dr. Rouleau's opinions. Although there are many instances in the record of the Plaintiff's chronic back pain, many of the medical opinions state that he can continue to work. *See* R. at 166,177, and 183. Dr. Jackson's or Dr. Rouleau's opinions are the only opinions that say otherwise.

24. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Secretary's decision stands and Plaintiff is not entitled to relief. *See e.g., Hamilton v. Secretary of Health & Human Servs.*, 961 F. 2d 1495, 1497-1500 (10th Cir. 1992). I find that the ALJ supported the Plaintiff's pain determination with substantial evidence. There is nothing in the record, that is credible, to contradict the evidence relied upon in the ALJ's opinion.

25. In addition to the ALJ's pain determination being supported with substantial evidence, the ALJ's credibility determination with respect to the Plaintiff's complaint of pain was also properly made. While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1490 (10th Cir. 1993).

26. The ALJ should consider, when determining credibility, such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston*, 838 F.2d at 1132 and n. 7).

27. In this case, the ALJ noted that Mr. Quinnell had infrequently sought treatment from his doctors and that there were few medical visits during the relevant time frame. Specifically, there are few evaluations in the record post March, 1996, the onset of Mr. Quinnell's disability, as opposed to the number of evaluations pre March, 1996.[3] The record indicates that Mr. Quinnell

---

[3] The following citations represent the number of visits Mr. Quinnell made to his primary care physicians after the onset of his disability: *See* R. at 226-31 (represents five visits in 1996 and two visits in 1997); *see* R. at 263-64 (represents two visits in 1998); and *see* R. at 269 (represents one visit in 1999). The following citations

11

visited his primary care physician approximately eleven times from August, 1996 to February of 1999. Furthermore, the record reflects over twenty visits to the doctor from March, 1994 to February, 1996. One of the enumerated factors set forth in *Thompson* is regular contact with a doctor. After review of the record, it seems the Plaintiff's visits to the doctor dwindled instead of increasing after the onset date of his disability.

28. The ALJ also noted that although the Plaintiff testified "he uses a cane 'occasionally' as well as a TENS unit and a back brace," the record does not wholly substantiate such testimony. *See* R. at 17. There few references to the Plaintiff's use of a TENS unit and little to no references of his use of a cane or a back brace. Although the Plaintiff's doctors recommended use of a TENS unit, there is no record of Mr. Quinnell trying one for pain relief. *See* R. at 132 and 150. In fact, in October of 1995, Mr. Quinnell stated to Dr. Jackson that he had never used one before. *See* R. at 148.

29. Furthermore, the Court adds that according to the record, in March of 1996, Mr. Quinnell noted to one of his doctors that he dislikes taking his medication. *See* R. at 138. In addition, there are no references within the record of Mr. Quinnell attending physical therapy sessions during the relevant time period. However, before Plaintiff's onset date of disability, there are multiple notations referring to the beneficial effect of physical therapy on Plaintiff's pain condition. *See* R. at 177, 183, 190, 227-29, and 248. There is no reason indicated within the record why physical therapy would not be an option now.

30. Since it is not the duty of this Court to make an independent judgment as to the

---

represent the number of visits Mr. Quinnell made to his primary care physicians prior to the onset of his disability: *See* R. at 188, 194-99, 201-03, and 260 (represents eight visits in 1994); *see* R. at 147, 153-55, 162-85, and 254 (represents twelve visits in 1995); and *see* R. at 248 (represents one visit in February, 1996).

credibility of the Plaintiff's testimony regarding his subjective physical symptoms, the Court defers to the ALJ's finding. *See Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983). However, the ALJ must have based his finding on substantial evidence. *See Kepler v. Chater*, 68 F. 3d 387, 391 (10th Cir. 1995) (citing *Huston v. Bowen*, 838 F. 2d 1125, 1131, 1133 (10th Cir. 1988)). In coming to his conclusion, the ALJ based his credibility assessment of the claimant on evidence in the record and reasonably determined that the claimant was not credible. A review of the record establishes that the ALJ's findings are accurate and entirely consistent with the record. The ALJ applied the correct legal and standards and substantial evidence supports his determination that Plaintiff's complaints of disabling pain lacked credibility.

**Residual Functional Capacity**

31. Plaintiff next argues that the ALJ erred in assessing his residual functional capacity (RFC). Specifically, the Plaintiff asserts that 1) the ALJ did not take into account his inability to sit or stand for any period of time or the fact he could only walk for fifteen to twenty minutes and 2) he failed to provide specific reasons for his finding. The Commissioner asserts that the ALJ correctly relied on the vocational expert who based his decision on the Plaintiff's sitting and standing limitations and listed specific examples of job availabilities. At step four, the ALJ determined that the Plaintiff was not disabled and that he retained the residual functional capacity to perform at least sedentary work on a sustained basis. *See* R. at 17. The ALJ relied not only on the vocational expert's opinion at the hearing, but also a medical consultant's opinion and the Plaintiff's testimony. *See* R. at 14-15, and 16-17. In conjunction with his RFC determination, the ALJ made the following statements:

> [t]he medical consultant with Disability Determination Services reviewed the medical records and prepared a form regarding the claimant's depressive or affective disorder

13

in October 1996. According to this consultant, the claimant did not have a 'severe' depressive disorder. This medical consultant relied on the contents at Exhibit 11F which is a medical report from outpatient clinic at the 'University of California' in San Diego dated February 27, 1996. Consequently, this consultant determined that, although the claimant had been diagnosed with an adjustment disorder with a depressed mood, such disorder had not caused any functional limitations regarding his social functioning and it had caused only 'slight' restrictions if his daily living activities. *See* R. at 15.

The ALJ also noted that

> the claimant testified he has 'problems' sitting or standing for 15 minutes. Although he is not able to squat, sedentary work as defined in the regulations does not require a significant amount of squatting. Also, the claimant testified at the hearing that he is able to lift 10 to 15 pounds which is consistent with the demands of sedentary work. . . . In addition, the claimant's testimony that he is confined in bed for two days at times is not supported by the underlying medical reports. *See* R. at 6-17.

32. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 CFR § 404.1567(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See id*.

33. The Plaintiff argues that the ALJ failed to support his RFC conclusion with substantial evidence and that he did not take into account his physical limitations. Particularly, the Plaintiff points to an assessment made by his worker's compensation insurance carrier which stated that as of April, 1997, the Plaintiff was totally and permanently disabled due to his chronic pain and his inability to sit or stand for any period of time. First, with respect to the worker's compensation review, determinations by other government agencies are entitled to consideration, but are not dispositive on the issue of disability under Social Security Regulations. *See Mandrell v. Weinberger*, 511 F. 2d 1102, 1103 (10th Cir. 1975) (*cited in Gathright v. Shalala*, 872 F. Supp. 893, 899 (D. N.

M. 1998)) (Determinations of disability made by other government agencies are entitled to consideration by the Commissioner. However, the amount of weight to be attached to another government agency's disability determination is left to the Commissioner to determine.). Second, the ALJ's RFC determination was based on the fact the Plaintiff, himself, testified he could only lift ten to fifteen pounds. *See* R. at 17.

34. In addition, the ALJ's question to the VE accommodated the claimant's current condition. The ALJ further limited the question parameters for the VE's consideration to an individual who could sit, stand, and walk for only fifteen minutes at a time or in the alternate sitting and standing at will. *See* R. at 51. The VE concluded that the Plaintiff could perform jobs including a collections clerk or an investigator for credit applications. *See* R. at 52. After reviewing the record and the transcript of the Plaintiff's hearing, I find The ALJ properly relied on the medical consultant's opinion, the Plaintiff's testimony, and the VE's recommendation. In addition, the ALJ properly discredited the only two opinions that limited the Plaintiff's ability to perform sedentary work. *See supra* ¶¶ 21-23. Therefore, I recommend finding that the ALJ's RFC determination is supported by substantial evidence.

### Vocational Expert

35. The Plaintiff argues the ALJ ignored the VE's conclusion that there would be no jobs available if the claimant's assumed pain would affect his attention and concentration about three quarters of the time. This answer was in response to the following hypothetical: what would the impact on the availability of jobs be if the claimant could not sit, stand, or walk for more than fifteen minutes, has a mild but continuous hand tremor; and pain that affects attention and concentration for two-thirds of the day? *See* R. at 52-53.

36. Although the VE does in fact testify that such limitations would eliminate all jobs, the evidence in the record does not substantiate part of that particular hypothetical question. For example, there is no evidence in the record to indicate that the Plaintiff's attention and concentration were limited to the degree stated. It is well settled that "[t]he hypothetical question should include all--and only-- those impairments borne out by the evidentiary record." *Bean v. Chater*, 77 F. 3d 1210, 1214 (10th Cir. 1995). However, the ALJ is not required to accept the answer to a hypothetical question that includes limitations claimed by plaintiff but not supported by the record. *See id.*; *see also Decker v. Chater*, 86 F. 3d 953, 955 (10th Cir. 1996); and *Talley v. Sullivan*, 908 F. 2d 585, 588 (10th Cir. 1990) (ALJ not bound by the vocational experts opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ). Therefore, the ALJ was well within his province to disregard some of the VE's testimony since it was not all supported by the record as a whole.

37. The Plaintiff also argues that the ALJ "deliberately ignored" the VE's opinion of employability by stating at the hearing "[that with] the degree of education and level of skill . . . . you are much better equipped to make a vocational adjustment to accommodate your limitations." *See* R. at 55. There is nothing in the ALJ's opinion to suggest he relied on the Plaintiff's educational background to determine his RFC of sedentary work. Therefore, I find this argument unpersuasive and meritless.

### Duty to Develop the Record

38. The Plaintiff argues that "[t]he record contains some thirteen pages of reports and

16

assessments as regards the claimant's [sic] mental impairment (Tr. 134-46), among others. Yet the commissioner saw fit and proper to proceed without further development of the mental impairments." *See* R. at 9.

40. Because a Social Security disability hearing is a non-adversarial proceeding, the ALJ bears the responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F. 3d 359, 360-61 (10th Cir. 1993). The ALJ has broad latitude in determining whether to order a consultative examination. *See Diaz v. Secretary of Health & Human Servs.*, 898 F. 2d 774, 778 (10th Cir. 1990). In deciding whether the ALJ erred in not ordering a consultation, the Court must consider whether there is sufficient medical evidence in the record so that the ALJ can make an informed decision without a consultative examination. *See Matthews v. Bowen*, 879 F. 2d 422, 424 (8th Cir. 1989).

40. In this situation there is sufficient evidence concerning the effect of the Plaintiff's mental condition on his ability to work. In February, 1996, a medical consultant reviewed the Plaintiff's record and concluded that "although the claimant had been diagnosed with an adjustment disorder with a depressed mood, such disorder had not caused any functional limitations regarding his social functioning and it had caused only 'slight' restrictions of his daily living." *See* R. at 15 (citing R. at 205-13). The medical consultant also noted that the claimant "seldom" possessed deficiencies of concentration, persistence, or pace. *See id*. In addition, the medical records pertaining to the Plaintiff's mental limitations are dated before his onset date of disability and were never listed as the cause of his inability to work. Therefore, I find that the ALJ's assessment regarding the

Plaintiff's mental limitations was correct based on the evidence within the record and that there was no need for him to obtain additional medical consultations.

### Treating Physician's Opinion

41. The Plaintiff argues "the medical opinion is that the claimant is totally and permanently disabled." *See* Pl. Brief at 7. The Plaintiff's argument fails to indicate which treating physicians' opinions were ignored by the ALJ. The Plaintiff's argument, in its entirety, merely states the following: "In this case, the medical opinion is that the claimant is totally and permanently disabled. The conclusion are supported [sic] by medical reports and continuing care by the treating physicians. How does the ALJ or the Commissioner deal with the entire body of law on this issue?" Although it is difficult to ascertain the Plaintiff's exact argument, the Court can only assume he disagrees with the ALJ's findings regarding Dr. Jackson and Dr. Rouleau. With respect to the ALJ's findings regarding these two physicians, the ALJ did not ignore their opinions, but in fact performed a lengthy analysis and determined that their opinions were not consistent with the record as a whole. *See supra* 21-23. Therefore, I find the ALJ properly examined the record in its entirety and appropriately weighed the evidence.

### RECOMMENDED DISPOSITION

The ALJ did apply the correct legal standards and his decision is supported by substantial evidence. I recommend that the Plaintiff's Motion to Reverse and Remand Administrative Decision, filed February 25, 2002 (*Doc. 9*), should be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States

District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**